IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MARIO MARENO, | ) | CASE NO. 4:21CV01221 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| F. GARZA, Warden | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | **RE MOTION OF RESPONDENT TO** |
| | ) | **DISMISS OR FOR SUMMARY** |
| | ) | **JUDGMENT** |

**I.**

Federal and state judges alike have called the writ of habeas corpus the great writ.[1]

The name alone suggests something exceptional as it should.  The writ of habeas corpus

gives judges tremendous power to right wrongs that occurred in criminal cases, even to the

point of overriding the unanimous decision of 12 people who watched the trial from begin-

ning to end.  To better define—some would say to limit—the breadth and scope of this

judicial power, both federal and state legislatures have over time enacted laws that try to

---

[1] *See, e.g.*, *Ex parte Watkins*, 28 U.S. 193, 201 (1830) (opinion delivered by Marshall, CJ); *Boumediene v. Bush*, 553 U.S. 723, 826 (2008) (Roberts, CJ, dissenting); *Cullen v. Pinholster*, 563 U.S. 170, 210 (2011) (Sotomayor, J., dissenting); *In re Campbell*, 874 F.3d 454, 463 (6th Cir. 2017) (per curiam); *Bacall v. Stoddard*, 716 F. App'x 502, 511 (6th Cir. 2017) (Daughtrey, J., concurring); *State v. Keenan*, 143 Ohio St. 3d 397, 38 N.E.3d 870, 872 (2015); *Scott v. Houk*, 127 Ohio St. 3d 317, 939 N.E.2d 835, 845-46 (2010) (Pfeifer, J., dissenting).

explain how and when this writ gets exercised.  These laws arise out of practical necessity.

Many prisoners want to correct perceived errors in their trials or their sentences through

the great writ, but not every prisoner's case warrants the exercise of that kind of

extraordinary judicial power.  The end result is that far more requests are denied than

granted.

The petitioner in this case, Joseph Mario Moreno, asks that the great writ be

exercised in his favor.  His habeas request differs from the typical petition for two reasons.

He isn't asking to be resentenced or released outright.  And he isn't challenging a decision

made by a jury or a judge.  Instead, he challenges the Federal Bureau of Prison's finding

that he violated rules while on home confinement.  As punishment, the BOP reduced

Moreno's good-time credits by 13 days and re-incarcerated him.[2]

No doubt Moreno, like just about every other inmate, would prefer to spend the rest

of his sentence under house arrest rather than at a federal correctional facility.  He'd also

prefer to spend as few days incarcerated as possible.  And no doubt most would agree that

the rule infraction that caused the BOP to revoke Moreno's home confinement and to take

away 13 days of good-time credit is not particularly egregious.  Moreno stopped off along

the way at a nearby restaurant for lunch with his 69-year-old brother-in-law (not permitted

in advance) on his way back from visiting a flooring store (permitted in advance).  He

acknowledged this lunch break as a mistake.

---

[2] ECF #1, at 2.

The problem with Moreno's petition is a procedural one.  He did not exhaust the internal BOP appeal process.  As a result, the law prohibits me from exercising the great writ in his favor.  Accordingly, I recommend that Warden Garza's motion to dismiss be granted and that Moreno's petition be dismissed without prejudice for lack of subject matter jurisdiction, as I explain further below.

## II.

*Moreno's Criminal Case.*  A grand jury indicted Moreno and five other co-defendants on charges of wire fraud, federal program bribery, conspiracy to commit extortion, and extortion.[3]  On July 1, 2013, Moreno pled guilty to count 5, conspiracy to commit extortion in violation of 18 U.S.C. § 1951(a).[4]  On February 19, 2014, the District Judge sentenced Moreno to 132 months in prison, two years of supervised release, and restitution in the amount of $134,192.[5]  The government dismissed the other counts against Moreno.  The BOP designated Moreno to serve his sentence at FPC Duluth where Moreno self-surrendered on April 21, 2014.[6]

*Moreno's Home Confinement.*  A little more than six years later, the BOP released Moreno to home confinement pursuant to the expanded authority granted to the BOP under the CARES Act.[7]  Prior to the COVID-19 pandemic, the BOP Director had the authority

---

[3] ECF #49, Case No. 1:12CR00459-1 (N.D. Ill.).
[4] ECF #165, Case No. 1:12CR00459-1 (N.D. Ill.).
[5] ECF #7-1, at 6; ECF #284 and ECF #286, Case No. 1:12CR00459-1 (N.D. Ill.).
[6] ECF #1-5, at 3; ECF #12, at 2; ECF #7-1, at 6.
[7] ECF #1, at 6; CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat 281.

"to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."[8]

Because of the quick spread of COVID-19 amongst prisoners, the CARES Act expanded the BOP Director's authority to release prisoners to home confinement. "During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."[9]  The Attorney General made the relevant finding with respect to the BOP on April 3, 2020.[10]

Home confinement rules are strict.  For example, prisoners on home confinement are on 24-hour electronic monitoring, and must remain in their residence except for specified reasons such as jobs, community service, medical treatment, religious activities, and to "participate in other family-related activities that facilitate the prisoner's successful reentry such as  a family funeral, a family wedding, or to visit a family member who is seriously ill."[11]  Regardless of the reason, all departures from a prisoner's residence are "subject to the approval of the Director,"[12] and prisoners on home confinement are to

---

[8] 18 U.S.C. § 3624(c)(2).

[9] CARES Act, Sec. 12003(b)(2), 134 Stat. 515-16.

[10] *See* Memorandum for the BOP Director from the Attorney General, Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, at 1 (Apr. 3, 2020), available at  https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_-april3.pdf, last accessed on 8/22/22.

[11] 18 U.S.C. § 3624(g)(2)(A)(i).

[12] 18 U.S.C. § 3624(g)(2)(A)(i)(II).

"comply with such other conditions as the Director determines appropriate."[13]

As part of his home confinement, Moreno signed a document entitled "Conditions of Home Detention" and a document entitled "Home Confinement and Community Control Agreement."[14]  One of his obligations was to "remain at [his] place of residence, except for employment, unless . . . given permission to do otherwise."[15]

The BOP released Moreno to home confinement on July 21, 2020.[16]  By all reports, Moreno made a lot of progress in both his personal and professional life.  Garza does not contest that Moreno complied with all the terms and conditions of his home confinement; never missed his check-in calls to the residential reentry center that were required three times a day; never missed any of the random accountability calls or visits his reentry supervisors made to make sure Moreno was where he was supposed to be; received over 70 travel and movement passes while on home confinement at his residence (5224 S. Mayfield Avenue in Chicago) and never once was found to have violated any of the rules; was approved to move to another residence (3721 South Damen Avenue in Chicago); and took it upon himself to rehab the new residence before he moved in.[17]  In short, Moreno's reentry successes were exactly what the BOP aims to achieve through its prisoner reentry programs.

*Violation of BOP Home Confinement Policy.*  Moreno's reentry success apparently

---

[13] 18 U.S.C. § 3624(g)(2)(A)(i)(III).
[14] ECF #7-1, 48-49.
[15] ECF #7-1, at 49.
[16] ECF #1-5, at 3.
[17] *See* ECF #12, at 2-3; ECF #1-5, at 3-4.

ended on December 29, 2020.  Two days earlier he had requested and received two travel passes.  The first allowed him to go from his residence to his new apartment that he was fixing up, and the second allowed him to go from his residence to a store called Floors and Décor (300 Countryside Plaza, Suite 300 in Countryside, Illinois).  He would first travel from his home to his new apartment and then return home (the first pass).  Then he would travel from his home to the flooring store and back (the second pass).  Moreno estimated that the time of the second trip would be from 11:30 a.m. to 2:30 p.m.[18]

Everything went according to Hoyle until the return trip home from the flooring store.  According to Moreno (and no one has contested this version of the events), his 69-year-old brother-in-law was the driver that day.  On the drive back, the brother-in-law told Moreno that he was hungry and possibly due to low blood sugar.  He asked Moreno if they could stop to eat at a restaurant that was located immediately before the required on-ramp to the expressway leading back to Moreno's home.  By Moreno's calculation, they had plenty of time to stop and have lunch, return back home, and check in with the halfway house within the authorized time frame.[19]  They did just that and returned home with ten minutes to spare.[20]

The problem, of course, was that the stop at the restaurant was not pre-approved.  The BOP's description of the incident follows:

> On 12/29/2929 at 1126 hours, resident Moreno, Joseph (PR/DHC) (GPS) # 44753-424 left his approved home confinement site located at 5224 S. Mayfield, Chicago, IL 60638; ph.#(630)636-9744 on an

---

[18] ECF #7-1, at 26.
[19] ECF #1-5, at 1.
[20] ECF #1-1, at 1.

approved pass to Floor & Décor, located at 300 Countryside Plaza, Suite 300, Countryside, IL 60525; ph.#(708)937-1325.  Resident Moreno returned to his approved home confinement site at 1421 hours.

On 01/04/2021 at 1330 hours, this writer conducted a case review for resident Moreno.  During this case review, GPS revealed that on 12/29/2020 from 1241 hours until 1401 hours (1 hour and 20 min.), resident Moreno deviated to an unauthorized location, JC's Ristorante, located at 8650 Joliet Road, McCook, IL 60525; ph.#(708) 387-0030.  Resident Moreno did not have authorization from this writer or any Salvation Army RRC staff member to deviate from his approved pass location.  Therefore, resident Moreno is in violation of the above code.[21]

The code referred to was Prohibited Act Code 200—Escape.  The BOP considered Moreno to be in escape status for an hour and 20 minutes.[22]

*The BOP's Procedure for Punishing Moreno.*  On January 4, 2021, the day the BOP prepared its incident report, Moreno was told he needed to report to the residential reentry center because of the report.  When he arrived, he was given a CDC packet.[23]  This packet included the three-page incident report.  The report itself is divided into three parts: Part I – Incident; Part II – CDC Action; and Part III – Investigation.[24]  Also included in the packet were a document captioned "Inmate Rights At Center Discipline Committee Hearing (RRC's),"[25] a document captioned "Notice of Center Discipline Committee Hearing

---

[21] ECF #1-1, at 1.

[22] *Id*; ECF #11-7, at 1.

[23] ECF #12, at 3.

[24] ECF #7-1, at 24, 23, and 25 (correct order).

[25] ECF #1-2.  "RRC" stands for residential reentry center, which in this case was sometimes abbreviated as "SARRC," which stands for Salvation Army Residential Reentry Center.

(CCC's),"[26] and a document captioned "Waiver of 24 Hour Notice."[27]  All three documents contain Moreno's signature.  He remembers signing the first two but not the third one.[28]

This last point is significant. Moreno challenges whether there was in fact a disciplinary hearing.  The "Notice of Center Discipline Committee Hearing" indicates when and where the hearing was to be held.  The location is the address of the Salvation Army Residential Reentry Center where Moreno was at that moment.  The hearing date is left blank but the time of 9:00 a.m. is written in.[29]  The "Waiver of 24 Hour Notice," however, states:

> I have been advised that I have the right to have a written copy of the charges(s) [sic] against me at least 24 hours prior to appearing before the Center Discipline Committee.  I wish to waive this right and **proceed with the Center Discipline Committee hearing at this time**.[30]

Moreno admitted to the violation to the investigator at the SARRC, acknowledging that he had made a mistake by stopping for lunch with his brother-in-law.[31]  He chose not to have a staff representative with him at the hearing,[32] and indicated his intention to call no witnesses on his behalf.[33]  After he met with the investigator, he went back home.  Moreno thought the hearing was yet to take place.  He later made some unsuccessful attempts to contact individuals involved with the disciplinary process.  He eventually

---

[26] ECF #1-3.  "CCC" stands for community corrections center.
[27] ECF #7-1, at 42.
[28] ECF #12, at 3.
[29] ECF #7-1, at 39.
[30] ECF #7-1, at 42 (emphasis added).
[31] ECF #12, at 3; ECF #1-1, at 2; ECF #7-1, at 21.
[32] ECF #1-3.
[33] ECF #1-2.

contacted his case manager, expressed his concerns, and was told that she would pass along the information to the individual apparently in charge of the hearing.  Some days later, Moreno received approval to go to a hospital for a couple of hours and approval to go to church services.[34]  These travel passes would seem anomalous for a person just adjudicated as an escapee.

On January 8, 2021, an individual at the SARRC called Moreno and told him to report to that center three days later for a conference.  He did as he was told, thinking that this was going to be his disciplinary hearing.  Instead, deputy U.S. marshals met him at the center and took him into custody.  The deputies transferred Moreno to MCC Chicago.[35]

While there on January 27, 2021, Moreno received the Center Discipline Committee report that sets forth the investigation into the violation, the evidence against Moreno, and the punishment of the loss of 13 good-time credits.[36]  On April 6, 2021, the BOP transferred Moreno to FCI Elkton where he is presently incarcerated.  The BOP currently calculates Moreno's release date as February 6, 2023.[37]

*Moreno's Challenge of His Reincarceration.*  Moreno challenged the loss of 13 days of good-time credit and the loss of his home confinement privileges by filing on February 22, 2021 an administrative appeal to the regional director.[38]  The record does not contain a copy of the appeal document.  The next day, the BOP informed Moreno that it would take

---

[34] ECF #12, at 4.
[35] ECF #12, at 4-5.
[36] ECF #1-4.
[37] *See* https://www.bop.gov/inmateloc/, last accessed on 8/16/22.
[38] ECF #12, at 5.

an additional 30 days to respond, thus making April 23, 2021 the amended due date for the BOP's response.[39] The BOP apparently didn't need all of that extra time. It denied Moreno's regional appeal on March 5, 2021. The record does not contain a copy of this ruling either except for a computer-generated summary print-out that shows that Moreno's first appeal was denied on that date.[40]

Moreno claims he never received the March 5, 2021 ruling. He speculates that the BOP mailed the ruling to him while he was in MCC Chicago and prison officials never forwarded to him his mail when he got transferred to FCI Elkton on April 6, 2021.[41] He may be right. That doesn't explain, however, why Moreno didn't attach a copy of his February 22, 2021 appeal either to his habeas petition or to his opposition to Garza's motion to dismiss or for summary judgment. Nor does that explain why Garza didn't include a copy of the BOP ruling in the materials supporting his motion.

Rather than miss the deadline for the next level of administrative appeal (to the BOP general counsel or central office), Moreno filed his central office appeal on May 13, 2021.[42] He starts off by explaining how he never received a copy of the regional director's order denying his first appeal, but that his case manager told him on May 11, 2021 that the BOP had denied his appeal.[43] Moreno, therefore, had no order to attach to his central office appeal. He presumably could have attached a copy of his first appeal, but there is nothing

---

[39] ECF #1-6.

[40] ECF #7-1, at 15.

[41] ECF #11, at 2.

[42] ECF #1-7.

[43] *Id.* at 1.

in the record to suggest that he did.  The regulation governing central office appeals requires these two documents to be attached to the appeal.[44]

This time the BOP's response reached Moreno at FCI Elkton.  On May 25, 2021, the administrative remedy coordinator at the BOP's central office informed Moreno that his central office appeal "IS BEING REJECTED AND RETURNED TO YOU.  YOU SHOULD INCLUDE A COPY OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION."[45]  The notification sets out two reasons for rejecting Moreno's second appeal:

> REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR REGIONAL OFFICE ADMINISTRATIVE REMEDY APPEAL (BP-10) FORM OR A COPY OF THE (BP-10) RESPONSE FROM THE REGIONAL DIRECTOR.
>
> REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.[46]

The record shows nothing further being done by Moreno (or the BOP for that matter) to address the issues raised in this notification.  This notification appears to end Moreno's administrative appeal efforts.

*Moreno's Federal Habeas Petition.*  On June 22, 2021, Moreno filed his pro se petition for federal habeas relief under 28 U.S.C. § 2241.[47]  Moreno seeks relief on four grounds:

---

[44] 28 C.F.R. § 542.15(b)(1).
[45] ECF #1-8 (capitalization in original).
[46] *Id.* (capitalization in original).
[47] ECF #1.

11

GROUND ONE: Moreno was not provided written notice of the charges at least 24 hours in advance of the Center Discipline Committee hearing in violation of his Due Process rights and Wolff v. McDonnell, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).[48]

GROUND TWO: Moreno's Due Process Rights were violated when he was denied his right to appear at his Center Discipline Committee hearing. Wolff v. McDonnell, 418 U.S. 539, 41 L. Ed. 935, 94 S. Ct. 2963 (1974).[49]

GROUND THREE: Moreno also was not given at least 24 hours advance notice of his Discipline Hearing Officer Hearing in violation of his Due Process Rights and Wolff v. McDonnell, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).[50]

GROUND FOUR: Moreno's Due Process Rights were further violated when his Discipline Hearing Officer held the DHO Hearing in his absence. Wolff v. McDonnell, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).[51]

*Garza's Motion to Dismiss or for Summary Judgment.* Respondent F. Garza, the warden at FCI Elkton, argues that Moreno's petition must be dismissed. He contends that Moreno received all of the procedural protections that were due him throughout his disciplinary proceeding. Furthermore, according to Garza, Moreno's claims for habeas relief cannot be adjudicated in a court because he failed to exhaust his administrative remedies. Garza also argues that this Court lacks jurisdiction to restore Moreno to home confinement.[52] In the alternative, Garza argues for summary judgment in his favor by contending that there is no genuine issue of material fact and that he is entitled to a

---

[48] *Id.* at 6.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 13.
[52] ECF #7, at 3.

judgment in his favor as a matter of law.[53]

As I note in the next part of this report and recommendation, Moreno concedes this third argument in his response to Garza's motion, and is no longer asking to be restored to home confinement.[54] He argues, though, that due process requirements were not met because he never received proper notice of his disciplinary hearing. He contends that his waiver of the 24-hour notice requirement was the result of a misrepresentation.[55] He further argues that his efforts were sufficient to meet exhaustion requirements. He admits he never forwarded to the BOP's central office the regional director's order denying his appeal, but argues that he did the best he could to follow BOP regulations by treating the regional director's failure to respond to his appeal as a denial.[56] Moreno challenges head-on the notion of escape, since he never was trying to flee any custodial restriction.[57] He further argues that he attended no hearing before a disciplinary hearing officer on escape charges, evidenced by the fact that he was allowed to return to his home on January 4, 2021 and subsequently told to appear at the residential reentry center on January 11, 2021 for a conference. He points out that Garza does not support his dispositive motion with, for example, a declaration from the Center Discipline Committee chairperson attesting to the fact that he appeared before her at the hearing.[58]

---

[53] *Id.* at 3-4.
[54] ECF #11, at 18.
[55] *Id.* at 4.
[56] *Id.* at 2.
[57] *Id.* at 13-17.
[58] *Id.* at 8.

Upon consideration of the parties' submissions, I recommend that Moreno's petition be dismissed without prejudice.  The record before me is untidy.  Nevertheless, one key fact is clear: Moreno made no effort to address the BOP's central office request to resubmit his second appeal with the proper paperwork attached as required by the BOP's applicable regulations.  The administrative appeal process had not run its course before Moreno filed his petition.

### III.

*Proper Respondent for the Petition.*  Before I begin my analysis of the pending motion to dismiss, one minor procedural issue needs attention.  Moreno's original petition named Mark Williams as the respondent as the warden of Federal Correctional Institution at Lisbon, Ohio.[59]  Moreno subsequently requested that F. Garza, the current warden of that institution, be substituted as the respondent.[60]  The respondent filed no opposition to that notice of substitution.

Section 2243 of the United States Code, Title 28 provides that "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained."  It further requires that "[t]he person to whom the writ or order is directed shall make a return certifying the true cause of the detention."  This statute is needed for habeas relief to work.

---

[59] ECF #1, at 1.
[60] ECF #9, at 1.

The respondent must be the person with the ability to produce the petitioner before the Court.[61]

Fed. R. Civ. P. 25 authorizes the remedy to rectify party alignment.  The rule allows the substitution of parties under various circumstances, such as when an interest is transferred or when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office.  Substitution of the proper respondent is appropriate; therefore, Warden Garza is the proper respondent in this case.

*Challenging the Punishment.*  Through his habeas petition, Moreno challenges the way the BOP punished him for his home confinement violation.  Although he asked for "immediate return to home confinement" in his petition,[62] he concedes in his opposition to Garza's motion to dismiss that this Court lacks jurisdiction to transfer him back to home confinement.[63]  Garza and Moreno are correct on this point of law.[64]

Moreno now limits his habeas relief request to expungement of the incident report related to the unauthorized lunch stop on December 29, 2020 and restoration of the 13 days

---

[61] *See*, *e.g.*, *Cedeno v. Gray*, No. 1:17CV949, 2018 WL 10150931, at *1 (N.D. Ohio Mar. 27, 2018), *report and recommendation adopted,* No. 1:17CV949, 2019 WL 6841797 (N.D. Ohio Dec. 16, 2019), *appeal dismissed,* No. 20-3098, 2020 WL 1951668 (6th Cir. Mar. 12, 2020); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) and citing *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 494–95 (1973)).

[62] ECF #1, at 13.

[63] ECF #11, at 18.

[64] *See*, *e.g.*, *United States v. Watson*, No. 1:19-CR-00085, 2021 WL 147051, at *1 n.1 (N.D. Ohio Jan. 15, 2021) ("[t]he Court cannot order home confinement") (citing *Johnson v. Williams*, No. 4:20 CV 1325, 2020 WL 7324763, at *1 (N.D. Ohio Oct. 22, 2020), for the proposition that the BOP has the sole authority to decide whether home confinement under the CARES Act is appropriate).  *See also* 18 U.S.C. § 3621(b) ("a designation of a place of imprisonment under this subsection is not reviewable by any court").

15

of good-time credit he lost as a sanction.[65]  Accordingly, I will not address Garza's arguments as they specifically relate to Moreno's initial request to be returned to home confinement.

Like any prisoner in federal custody, Moreno has a constitutionally protected liberty interest in having the BOP comply with its regulations and procedures when it takes away good-time credits.[66]  Through his petition, he is challenging "the manner or execution of a sentence," which is a proper basis for seeking habeas relief.[67]  A habeas petition is also the proper vehicle "for challenging matters concerning the execution of a sentence such as the computation of good-time credits."[68]

The writ Moreno seeks extends to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States."[69]  Moreno argues that the BOP violated his constitutional due process rights when it adjudicated his violation of home confinement.  Moreno alleges:

- The BOP didn't give him written notice of the charges at least 24 hours in advance of the Center Discipline Committee hearing.

- The BOP didn't allow him to appear at the Center Discipline Committee hearing.

---

[65] *Id.  See also* ECF #1, at 13.
[66] *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).
[67] *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016) (citing *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir.), *cert. denied*, 534 U.S. 1008 (2001)).
[68] *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004) (citing *Cohen v. United States*, 593 F.2d 766, 770–71 (6th Cir. 1979); *Lee v. Young*, 43 F. App'x 788 (6th Cir. 2002)).  *See also Petty v. Stine*, 424 F.3d 509, 510 (6th Cir. 2005) (analyzing a challenge to the BOP's calculation of good-time credits under § 2241); *Lee*, 43 F. App'x at 789 (challenging a loss of good-time credits under § 2241).
[69] 28 U.S.C. § 2241(c)(3).

16

- No one gave him notice at least 24 hours in advance of his Discipline Hearing Officer hearing.

- The Discipline Hearing Officer held the disciplinary hearing in Moreno's absence.

Both parties agree that the Supreme Court has spelled out the constitutional due process protections applicable when the BOP takes away a prisoner's good-time credits.[70]

> When a prisoner faces the loss of good time credits, due process requires that a prisoner receive the following hearing rights: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. . . .  Further, some evidence must exist to support the disciplinary conviction.[71]

Garza argues that the BOP met these requirements.  Moreno disagrees.

*The Exhaustion Requirement.*  Many would no doubt lend a sympathetic ear to Moreno's situation.  After all, Moreno had a spotless record for the five months he was on home confinement.  Garza neither challenges that fact nor questions that Moreno had made substantial progress in all sorts of ways with his reentry.  But laws, not predilections or sympathies, must guide courts reviewing habeas petitions.  And one of the long-standing legal requirements before a court can consider a prisoner's habeas petition is exhaustion of administrative remedies.

---

[70] ECF #1, at 6, 16; ECF #11, at 17; ECF #7, at 6-7.

[71] *Lee*, 43 F. App'x at 789 (citing *Wolff*, 418 U.S. at 563–67, and *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455–56 (1985)).  *See also Settle v. Bureau of Prisons*, No. 16-5279, 2017 WL 8159227, at *2 (6th Cir. Sept. 20, 2017).

"Federal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241."[72]  This requirement applies to the calculation of good-time credits and COVID-19-related claims.[73]  Exhaustion ensures that a complete record of the administrative proceedings is before the judge who reviews the habeas petition.[74]  The underlying common-sense principle is this: before a court can review a prisoner's claim that the BOP made a mistake, the prisoner must give the BOP the full opportunity to correct that mistake.  This doesn't happen if the administrative appeal process never begins or is cut short.  The record here shows that that process hadn't run its course by June 22, 2021 when Moreno filed his habeas petition.

The BOP's administrative remedies are laid out in 28 C.F.R. part 542, subpart B.  The process takes the prisoner from the warden level to the regional director level (sometimes known as a BP-10 appeal) and then finally to the general counsel or central office level (sometimes known as a BP-11 appeal).  Garza is not contesting that Moreno appealed at each of the necessary steps.  It's the last one that poses a problem, though.

---

[72] *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 232 (6th Cir. 2006) (citing *Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir. 1981)).  *See also Campbell v. Barron*, 87 F. App'x 577 (6th Cir. 2004) (dismissing a § 2241 petition that sought good-time credit due to a failure to exhaust administrative remedies laid out under 28 C.F.R. § 542.10-19); *Aron v. LaManna*, 4 F. App'x 232, 232–33 (6th Cir. 2001).

[73] *Chastain v. Williams*, No. 4:20 CV 01036, 2020 WL 5994519, at *2 (N.D. Ohio Oct. 9, 2020) (citing *Stevenson v. Williams*, No. 4:20 CV 1009, 2020 WL 8812770, at *1 (N.D. Ohio June 22, 2020), *Quintero v. Hickey*, No. 5:11-CV-256-JMH, 2011 WL 5304061, at *2 (E.D. Ky. Nov. 3, 2011), and *Davis v. Zych*, No. 2:08-CV-13962, 2008 WL 4539395, at *2 (E.D. Mich. Oct. 7, 2008)).

[74] *See Knox v. Fed. Bureau of Prisons*, No. 407 CV 1510, 2007 WL 2156268, at *3 (N.D. Ohio July 24, 2007) (citation omitted).

In response to Moreno's central office appeal, that office informed Moreno on May 25, 2021 that he hadn't attached the necessary paperwork.[75]  The regulations specify the required attachments.[76]  The BOP gave him another chance to file correctly within a 15-day window.  The record shows that Moreno did nothing administratively in response. Instead, he filed his habeas petition with this Court.

Moreno pointed out in his initial central office appeal that he had never received the regional director's order denying his first appeal.[77]  Therefore, he now argues that he couldn't comply with the May 25, 2021 instruction from that office.  Perhaps.  But to exhaust the final step of the administrative appeal process, Moreno needed to file with the central office a document that stated (again) that he never received the necessary attachments and could not obtain them.  He needed to respond to the opportunity the central office was making available to him to refile his final administrative appeal.

By comparison with an ordinary appeal in a court of law, the central office in effect dismissed Moreno's appeal without prejudice and gave him the opportunity to refile properly.  Moreno never took advantage of this opportunity.  Consequently, the central officer never addressed his appeal on the merits.  And as a result, the administrative appeal process did not run its course; Moreno did not exhaust his administrative remedies.

Moreno's failure to refile his appeal in any manner raises two questions that the record before me does not answer.  First, why didn't Moreno already have a copy of his

---

[75] ECF #1-8.
[76] 28 C.F.R. § 542.15(b)(3).
[77] ECF #1-7, at 1.

first appeal that he could have attached to his central office appeal? After all, the BOP

regulation requires a copy of both the prisoner's prior appeal and the BOP's response.[78]  If

he never had received the BOP's response to his first appeal, he could have attached a copy

of his first appeal and thereby satisfy at least part of the BOP's regulatory requirement.  If

he no longer had a copy of his first appeal and could not obtain one, he could have at least

informed the central office of that fact when he refiled his appeal.

Second, if Moreno's speculation is correct that he never received the regional

director's order denying his first appeal because his mail was never forwarded to him when

the BOP transferred him from MCC Chicago to FCI Elkton, why didn't he subsequently

ask for a copy of the order denying his first appeal through a prison records request? If he

had done so, he could have mentioned that fact as well in his refiled central office appeal.

The record indicates that Moreno instead did nothing to address the missing attachments

to his central office appeal.  Because the administrative appeal process was not completed,

it would be unfair to Garza for this Court to adjudicate Moreno's petition.  The BOP did

not have its full opportunity to correct the mistakes Moreno believes the BOP made in his

disciplinary proceeding.

Moreno probably thought it would be futile to do anything more on the

administrative level.  He does not explicitly make this argument.  Futility can be argued to

counter—or waive—the exhaustion requirement.[79]  To waive on that ground, however,

would require Moreno to show that there was no reasonable prospect of obtaining relief

---

[78] 28 C.F.R. § 542.15(b)(1) and (3).

[79] *Manakee Pro. Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995).

through a further filing with the general counsel or central office.  This usually means a

showing that the agency lacks jurisdiction over the matter or has evidenced a strong

position on the issue and an unwillingness to reconsider its position.[80]

Despite the bureaucratic heft of the BOP—it is after all the largest component of the

U.S. Department of Justice with a budget of over $8 billion[81]—and despite the myriad

hurdles prisoners must navigate to have a chance at receiving relief, nothing in the record

anticipates a refusal by the BOP general counsel's office to review Moreno's violation and

punishment.  It is hard to assess which direction that office might have taken with regard

to this violation, since the record does not include the regional director's order denying

Moreno's first appeal.  But Moreno himself proposes alternative legal bases for the

violation short of escape.[82]  Nothing in the record suggests that the general counsel would

have been unwilling to listen.  Moreno might have even persuaded that office, particularly

in light of his otherwise clean record while on home confinement.  In any event, it is not

enough to argue that Moreno did all that exhaustion required of him simply because he

hadn't received the regional director's order denying his first appeal on March 5, 2021.[83]

I find, therefore, that it would not have been futile for Moreno to take that final step in the

administrative appeal process.

---

[80] *Knox*, 2007 WL 2156268, at *2 (citing *James v. U.S. Dep't of Health & Hum. Servs.*, 824 F.2d 1132, 1139 (D.C. Cir. 1987)).  *See also Manakee Pro. Med. Transfer Serv., Inc.*, 71 F.3d at 581.

[81] *See*  https://federalnewsnetwork.com/government-news/2022/08/us-keeping-ex-prison-chief-as-top-adviser-after-rocky-tenure/, last accessed on 8/24/22.

[82] ECF #1-5, at 1-2; ECF #11, at 13-14.

[83] ECF #11, at 2-3.

Adherence to the exhaustion requirement can at times produce harsh results.  But even if I were to ignore his failure to exhaust administrative appeals, even this untidy record strongly suggests that Moreno did in fact receive due process throughout the disciplinary process.

He waived notice of the hearing at least 24 hours in advance, and was alerted that the hearing would take place immediately.[84]  Moreno questions whether he signed the waiver (even though his signature appears on the document) and alternatively claims he signed the waiver because of a misrepresentation or confusion.  But he didn't have these same excuses as to the other important documents he signed at the same time and place on January 4, 2021.

Moreno also waived his right to present witnesses or to have a representative with him.  He chose to do so "by reason of Moreno's education and intelligence, as well as the fact that the escape charge was not complex."[85]  But if he was discerning on these points related to the hearing, I find it difficult to accept that he would be any less discerning when it came to the waiver of the 24-hour notice requirement.

By his own choice, Moreno became his only advocate.  So when he admitted to the violation, he left the matter in the BOP's hands.  But the BOP didn't rely just on Moreno's admission.  It had ample GPS data—certainly meeting the threshold of some evidence—to illustrate practically minute by minute Moreno's whereabouts on December 29, 2020,

---

[84] ECF #7-1, at 42.
[85] ECF #11, at 4.

including his stop at the restaurant on his way back home.[86]  And all of this was then presented to Moreno in a written document that laid out the evidence relied on and the reasons for the disciplinary action.[87]  The process may not have been flawless, but due process doesn't require perfection.[88]

## IV.

Moreno admitted he had made a mistake on December 29, 2020 by stopping for lunch with his brother-in-law while on his way back home.  Home confinement rules are strict.  And for good reason.  Moreno knows that better than most.  So, too, are the BOP's regulations for administrative appeals.  Moreno jumped too quickly to habeas relief before letting the BOP's administrative appeal process run its course.  Because he failed to exhaust his administrative remedies, this Court cannot adjudicate his petition.

Accordingly, I recommend that Garza's motion to dismiss Moreno's petition[89] be granted and that the petition be dismissed without prejudice for lack of subject matter jurisdiction because Moreno failed to exhaust administrative remedies.

Dated: August 25, 2022                                    s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

---

[86] ECF #1-4, at 3; ECF #7-1, at 28-38.
[87] ECF #1-4.
[88] *See Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("[t]he Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations") (citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)).
[89] ECF #7.

**NOTICE REGARDING OBJECTIONS**

Any party may object to this Report and Recommendation.  To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation.  If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it.  If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.