IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| | : | |
| JOSEPH MARIO MORENO, | : | CASE NO. 21-cv-1221 |
| | : | |
| Petitioner, | : | OPINION & ORDER |
| | : | [Resolving Doc.1] |
| v. | : | |
| | : | |
| WARDEN F. GARZA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Petitioner Joseph Moreno objects to a Report & Recommendation ("R&R") by
Magistrate Judge Baughman that recommended that this Court deny Moreno's habeas
corpus petition. As explained below, the Court **ADOPTS IN PART** and **DENIES IN PART**
the R&R and **DENIES** Petitioner Moreno's requested writ.

I.      Background

A.  Moreno's Home Release Violation

On July 1, 2013, Petitioner Moreno pled guilty to conspiracy to
commit extortion in violation of 18 U.S.C. 1951(a).[1] On February 19, 2014, this Court
sentenced Moreno to 132 months in prison and two years of supervised release.[2]

A little more than six years later, the BOP released Moreno to home confinement
under expanded BOP authority given by the CARES Act.[3] Magistrate Judge Baughman
found Moreno "made a lot of progress in both his personal and professional life" after his

---

[1] Doc. 17 at 3.
[2] *Id.*
[3] *Id.*

Case No. 21-cv-1221
GWIN, J.

release.[4] Moreno never missed check-in calls, never missed any random accountability checks, and received and complied with over 70 travel passes while on home confinement.[5] In short, "Moreno's reentry successes were exactly what the BOP aims to achieve through its prisoner reentry programs."[6]

But on December 29, 2020, Moreno violated a travel permit condition. Moreno received permission to travel from his residence to a store.[7] His brother-in-law drove him to and from the store.[8] On the return trip, Moreno's brother-in-law suggested they stop to eat lunch.[9] Moreno agreed, and the two ate lunch at a restaurant on the route leading back to Moreno's home.[10] Moreno and his brother-in-law returned in time for Moreno's accountability check-in.[11]

The travel permit did not authorize Moreno's lunch stop. As a result, the Bureau of Prisons ("BOP") classified him as violating "Prohibited Act Code 200—Escape" and considered him to be in escape status for an hour and 20 minutes.[12]

On January 4, 2021, the BOP revoked 13 days of Moreno's good-time credits. But the BOP did not take Moreno back into custody until four days later.[13] Notably, in those four days between finding that Moreno had violated his travel pass and returning him to custody, the BOP issued—and Moreno complied with—two more travel passes.[14]

Moreno returned to federal custody until October 28, 2022, when the BOP again

---

[4] *Id.* at 5.
[5] *Id.*
[6] *Id.*
[7] Doc. 17 at 6.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 6–7.
[13] *Id.* at 7, 9.
[14] Doc. 17 at 9.

Case No. 21-cv-1221
GWIN, J.

released him to home confinement.[15]

### B. Moreno's Habeas Petition

On June 22, 2021, Moreno petitioned for a writ of habeas corpus.[16] In his petition, Moreno argues that the BOP violated his due process rights because it did not give him notice of the time and date of his disciplinary hearing. Because he did not know when the hearing took place, he was unable to attend the hearing to speak in his own defense.[17]

While Moreno initially sought his re-release to home confinement and the return of his good-conduct credits, he later conceded that this Court lacks jurisdiction to order a prisoner's release to home confinement.[18] Instead, he now seeks only the return of his good-conduct credits and expungement of the disciplinary incident from his record.[19]

On December 10, 2021, the BOP moved to dismiss, arguing both that Moreno's due process rights were not violated and that, in any case, Moreno had failed to exhaust his administrative remedies before petitioning for district court habeas relief.[20]

On August 25, 2022, Magistrate Judge Baughman recommended that the Court dismiss Moreno's petition for failure to exhaust.[21] On September 12, 2022, Petitioner filed an objection to Magistrate Judge Baughman's Report and Recommendation.[22]

### II.   Discussion

### A. Legal Standard

The Court reviews the objected-to portions of a magistrate judge's Report and

---

[15] Doc. 19.
[16] Doc. 1.
[17] Doc. 17 at 16–17.
[18] Doc. 11 at 18.
[19] Doc. 17 at 13, Doc. 11 at 18.
[20] Doc. 7.
[21] Doc. 17.
[22] Doc. 18.

Case No. 21-cv-1221
GWIN, J.

Recommendation *de novo*.[23]

### B. Analysis

Magistrate Judge Baughman recommended that the Court dismiss Petitioner's writ for failure to exhaust administrative remedies. Judge Baughman also found that, while the BOP had not been careful to preserve Petitioner Moreno's due process protections, Petitioner's due process rights had not been violated.[24] Petitioner Moreno objected to both these findings. Thus, the Court reviews all the legal conclusions in the Report *de novo*.

#### 1. Exhaustion

"Federal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241."[25] Contrary to Magistrate Judge Baughman's recommendation, this Court finds Petitioner Moreno exhausted his administrative remedies.

The BOP's administrative remedies are laid out in 28 C.F.R. part 542, subpart B. The process takes a prisoner from the Warden level to the Regional Director level (known as a BP-10 appeal) and then finally to the General Counsel or Central Office level (known as a BP-11 appeal).[26] The BOP does not contest that Moreno appealed at each of these levels.[27] Rather, it argues that Moreno did not finish the Central Office-level appeal process.

The Central Office requires prisoners to attach a copy of their BP-10 appeal and of the order denying that BP-10 appeal to their BP-11 appeal.[28] The regulations give prisoners

---

[23] *Mills v. May*, 2021 WL 1176749, at *1 (N.D. Ohio Mar. 29, 2021), certificate of appealability denied, 2022 WL 1527403 (6th Cir. Jan. 4, 2022).
[24] Doc. 17 at 22–23.
[25] *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 232 (6th Cir. 2006) (citing *Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir. 1981)).
[26] Doc. 17 at 18.
[27] *Id.*
[28] Doc. 1-8.

Case No. 21-cv-1221
GWIN, J.

only a limited amount of time in which to appeal a BP-10 decision to the Central Office or

General Counsel level. Moreno says that he never received a copy of the Regional

Director's order denying his BP-10 appeal.[29] Thus, to meet the Central Office deadline,

Moreno filed his BP-11 appeal without the required copies of the BP-10 appeal and order.

He informed the Central Office in his appeal paperwork that he had never received a copy

of the BP-10 order.[30]

      The Central Office rejected Moreno's BP-11 appeal and ordered him to refile it

within 15 days with the BP-10 papers attached.[31] Instead, Moreno determined that he had

no way to comply with that instruction and that his administrative remedies were

exhausted. He then filed his habeas petition before this Court.[32]

      Magistrate Judge Baughman concluded that Moreno did not exhaust his

administrative remedies because he could have refiled the BP-11 appeal with, at minimum,

a copy of his BP-10 appeal and a new note explaining that he still did not have access to

the Regional Director's order.[33]

      But the Sixth Circuit has confronted this exact scenario and held otherwise. In

*Risher v. Lappin*, the Sixth Circuit reversed a district court summary judgment for the BOP

that had been based on a prisoner's failure to exhaust his administrative remedies.[34] There,

Petitioner Risher had filed a BP-11 appeal to the Central Office in which he did not attach a

copy of either his Regional Office appeal or the Regional Director's decision rejecting that

appeal. Instead, he attached an affidavit stating that he had never received a response from

---

[29] Doc. 17 at 10–11.
[30] *Id.* at 19.
[31] *Id.* at 11.
[32] *Id.*
[33] *Id.* at 19.
[34] 639 F.3d 236 (6th Cir. 2011).

Case No. 21-cv-1221
GWIN, J.

the Regional Director.[35]

The Central Office rejected Risher's appeal and ordered him to resubmit it within 15 days with the required copies attached.[36] When Risher instead filed a district court *Bivens* action, the BOP argued that Risher "could have located the Regional Director's response and resubmitted his appeal, given that the Central Office had allowed him an extension of time in which to do so."[37]

The Sixth Circuit rejected the BOP's argument, stating:

> [T]hough that might have been possible, we decline to impose requirements on Risher for exhaustion purposes that go beyond what was specifically required by the Bureau's grievance procedure. [...] He was not required to make additional efforts beyond the scope of the Bureau's regulations simply because the Regional Director failed to supply him with a document, something it was obligated to do.[38]

Likewise, here, the Court will not impose on Petitioner Moreno an obligation to hunt down the BP-10 order after the Regional Director failed in their duty to convey the order to him. Thus, the Court **DECLINES** to adopt Magistrate Judge Baughman's recommendation that Petitioner Moreno's writ be dismissed without prejudice for failure to exhaust administrative remedies.

### 2. Mootness

"The Court can only adjudicate actual, ongoing cases or controversies."[39] "The

---

[35] *Id.* at 239.
[36] *Id.*
[37] *Id.* at 240.
[38] *Id.* at 240–41 (citing 28 C.F.R. § 542.18).
[39] *Lowery v. United States*, 2021 WL 3209925, at *1 (N.D. Ohio July 29, 2021) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

Case No. 21-cv-1221
GWIN, J.

parties must continue to have a personal stake in the outcome of the lawsuit," and "it is not enough that a dispute was very much alive when suit was filed."[40]

Petitioner Moreno filed his habeas petition after the BOP re-incarcerated him. Then, in October 2022, the BOP released Moreno back into a reentry program while his petition was still pending. The Court finds that Moreno's petition is at least partially mooted by his release.

Moreno has petitioned for the restoration of 13 days of good-conduct credits and expungement of his record. But good conduct credits become irrelevant once a prisoner is released.[41] So Moreno's petition as to his conduct credits is now moot.

Whether Moreno's expungement request is moot is a closer question. The Court did not find precedent within this Circuit that addresses the issue. Elsewhere, the Eighth Circuit has found that an expungement request remains a live issue if a prisoner is released while his habeas petition is pending but the disciplinary infraction on the prisoner's record then contributes to the prisoner having his release revoked.[42] On the other hand, the Fifth Circuit rejected as too speculative a former prisoner's argument that having an infraction on his record *might* affect his supervised release or custody classification in the future.[43]

The Court is inclined to follow the Fifth Circuit and find that the risk of Petitioner Moreno's disciplinary record affecting his second supervised release is too speculative for his expungement request to be a live issue. There is no indication that Moreno, who was

---

[40] *Lewis*, 494 U.S. at 477–78 (citation omitted).

[41] *See Scott v. Schuykill FCI*, 298 F. App'x 202, 204 (3d Cir. 2008) (finding prisoner's petition for restoration of good conduct credits moot because the prisoner had completed his sentence while his petition was pending); *James v. Outlaw*, 142 F. App'x 274, 275 (8th Cir. 2005) (finding petition for restoration of conduct credits mooted by prisoner entering supervised release).

[42] *Leonard v. Nix*, 55 F.3d 370, 373 (8th Cir. 1995).

[43] *Watkins v. Vasquez*, 451 F. App'x 429, 430 (5th Cir. 2011).

Case No. 21-cv-1221
GWIN, J.

an otherwise model reentry program participant, will violate his release conditions a

second time. But as discussed below, even if Moreno's petition is not entirely moot, the

Court in the alternative agrees with Magistrate Judge Baughman's conclusion that Petitioner

Moreno's due process rights were not violated.

### 3.  Due Process

Procedural due process violations in prison disciplinary hearings are evaluated

under a harmless error standard.[44] Meanwhile, substantive due process in prison

disciplinary hearings is satisfied "if some evidence supports the decision by the prison

disciplinary board."[45] "The quantity of evidence to support a disciplinary conviction is

minimal and does not involve the independent assessment of witness credibility or

weighing of evidence by the federal courts. Consequently, a prison disciplinary decision

should be upheld if 'some evidence' in the record supports the decision."[46]

Petitioner Moreno argues that the BOP violated his procedural due process rights

because the BOP failed to give notice of his hearing time and that he missed his

opportunity to appear at the hearing and explain himself.[47]

Moreno admits that he signed a waiver of his right to at least 24 hours' notice of his

hearing and admits that he agreed to "proceed with the hearing immediately."[48] But

Moreno did not waive altogether his right to appear at the hearing, and he says the BOP

deprived him of that right because a BOP officer told him to leave the BOP investigation

---

[44] *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).
[45] *Humphreys v. Hemingway*, 77 F. App'x 788, 789 (6th Cir. 2003) (quoting *Superintendent, Mass. Corr. Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985)).
[46] *Id.*
[47] Doc. 18 at 5.
[48] Doc. 11 at 4.

Case No. 21-cv-1221
GWIN, J.

facility and wait at home until someone contacted him about the hearing.[49] The BOP then

proceeded with his hearing without him.[50] He did not learn of the hearing and its outcome

until he was taken back into custody.

As to substantive due process, Moreno argues that his punishment violated

substantive due process because the BOP did not satisfy even the low "some evidence"

standard for concluding that he committed an Escape violation. He contends that his

behavior does not conform to the BOP's definition of "escape," and should have been

classified instead as a lesser infraction.

Magistrate Judge Baughman agreed that the BOP's hearing process was not

"flawless," but concluded that the issues Moreno raised were not so severe as to have

deprived Moreno of due process.[51] In particular, the R&R highlights that the BOP relied on

(1) Moreno's admission to an investigation officer that he had made a "mistake" and (2)

GPS tracking data showing that Moreno deviated from his approved travel route and went

to the restaurant.

On the procedural due process issue, the R&R found that the BOP's reliance on

extrinsic GPS evidence would have permitted the BOP to conclude Moreno had violated

his release terms regardless of testimony Moreno might have given.[52] Thus, Moreno has not

shown that his absence at the hearing was more than harmless error.

On the substantive due process side, the R&R found that both Moreno's admission

and the GPS data are enough to show "some evidence" of the violation.[53] Given that the

---

[49] Doc. 11 at 5.
[50] Id.
[51] Doc. 17 at 22.
[52] Id.
[53] Id. at 22–23.

Case No. 21-cv-1221
GWIN, J.

BOP needs only a "minimal" amount of evidence to satisfy the "some evidence" standard,

the Court agrees.

### III.   CONCLUSION

The Court **ADOPTS IN PART** and **REJECTS IN PART** Magistrate Judge Baughman's

Report and Recommendation and **DENIES** Petitioner Moreno's petition for habeas corpus.

IT IS SO ORDERED.


Dated: February 2, 2023                                   _s/      James S. Gwin_
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE